## UNITED STATES *v.* ALGER.

## UNITED STATES *v.* STAHL.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 885, 886. Petitions for rehearing. Distributed March 3, 1894.—Decided March 19, 1894.

Under the act of March 3, 1883, c. 97, 22 Stat. 473, an officer in the navy, who resigns one office the day before his appointment to a higher one, though in a different branch of the service, is only entitled to longevity pay as of the lowest grade, having graduated pay, held by him since he originally entered the service.

*United States* v. *Alger*, 151 U. S. 362, and *United States* v. *Stahl*, 151 U. S. 366, reaffirmed.

THESE were petitions for a rehearing of two cases decided January 22, 1894, and reported in 151 U. S. 362 and 366.

In Alger's case the petition said : " In this case the claimant was appointed cadet midshipman September 22, 1876; graduated June 22, 1882, and promoted to midshipman the same. day; commissioned ensign June 26, 1884. He resigned November 10, 1890, and on November 11, 1890, was appointed professor of mathematics, to rank from November 1, 1890. The claimant was given credit on his commission as ensign for his service as cadet midshipman and midshipman, and was paid the pay of an ensign after five years of service, from June 26, 1884, to the date of his resignation, but claims that he has not been allowed credit under the act of March 3, 1883, in the lowest grade, having graduated pay since he entered the navy as professor of mathematics. The claimant sues for the pay of a professor of mathematics in the third five years

from the date of appointment by reason of his prior service, in the navy, to wit, from September 22, 1876, to November 10, 1890, by virtue of the provisions of the act of March 3, 1883, and the Court of Claims gave him judgment for the amount claimed, but this court has reversed this judgment as erroneous."

In Stahl's case the petition set forth a resignation, August 10, 1887, of the office of assistant engineer, and the appointment of the petitioner, August 11, 1887, as assistant naval constructor.

*Mr. William A. Maury,* for both petitioners, said, in his brief, entitled in Stahl's case :

If the case had been orally argued, it is more than probable that the attention of the court would have been called to some important considerations of a public and general character which do not seem to have been mentioned or weighed.

In the first place, the act of the appellee in resigning his commission as assistant engineer preparatory to his appointment as an assistant naval constructor was in obedience to a requirement of the Navy Department as a necessary step in an officer's transfer from one branch of the service to another, and if the appellee had not been mindful of this practice by sending in his resignation, it would have been required by the department before issuing his commission as an assistant naval constructor. This is conclusively established by the letter of the Secretary of the Navy of February 28, 1894, which, together with the letters that called it forth, is printed at the end of this brief, and in which the Secretary states that "it has been the invariable practice of the Navy Department to require officers serving in one branch of the naval service to resign from the navy before accepting appointment to any other branch of the service." . . .

In view, then, of this well-established practice, of which it is conceived this court will take notice, the intimation, if not direct imputation, in the government's brief that the appellee's act in resigning was a mere subterfuge for a sordid purpose

was an unjust and unwarrantable reflection upon the appellee and the other honorable gentlemen of the navy who are in his situation, as well as disrespectful to a great department of the government, and, no doubt, misled the court into some suspicion of improper conduct on the part of the appellee.

It is an equally well-known fact that in the Navy Department and in the navy generally it has been understood from the passage of the act of 1883 down, that a transfer from one branch of the service to another entitled the officer transferred to longevity pay under the act, whether such officer had already had the benefit of the act or not before his transfer.

In other words, the Secretary of the Navy, in the performance of his duty of interpreting and applying the laws appertaining to that arm of the service, has always held that the proceeding of transferring an officer from one branch of the service to another involved, first, a severance of all connection with the service and then a reëntry into it. And hence when the appellee was transferred to the construction corps, his name was placed at the foot of the list of assistant naval constructors in obedience to section 1485, Revised Statutes, which provides that " The officers of the staff corps of the navy shall take precedence in their several corps, and in their several grades, and with officers of the line with whom they hold relative rank, according to length of service in the navy."

In short, the appellee, so far as his rank or precedence in the construction corps is concerned, was treated precisely as though his transfer had been his first entry into the navy.

This is also established incontrovertibly by the letter of the Secretary of the Navy of February 28, 1894, and the other letters already referred to and hereto annexed.[1]

---

[1] *Letter of Assistant Naval Constructor W. L. Capps.*

NAVY DEPARTMENT,
BUREAU OF CONSTRUCTION AND REPAIR,
WASHINGTON, D. C., *February* 14, 1894.

SIR: 1. A recent decision of the Supreme Court seriously affects the status of commissioned officers who have resigned from one branch of the service and have been appointed to another, inasmuch as it deprives such officers of the benefits of their previous service in computing longevity in the lowest grade having graduated pay.

In his letter the Secretary says that " it has further been the uniform practice to place the names of such officers [transferred to one corps from another] without regard to their previous rank, at the foot of the list of officers in the new

2. The immediate effect of this decision is to reduce the pay of officers at the head of the list of assistant naval constructors to an amount less than that allowed their juniors in the same grade who entered the naval service and the construction corps several years after those at the head of the list.

3. Moreover, in the case of Naval Constructors Armistead, Baxter, and Stahl, and Assistant Naval Constructor Capps, it checks against their pay the amount claimed to have been overpaid them by reason of crediting these officers with their previous service in the line and engineer corps of the navy.

4. The invariable practice of the Navy Department has been to regard transfer from one branch of the service to another as a reëntry into the service, as is clearly shown by the department's requirement that officers should resign their commissions before being appointed to another corps, and placing them at the bottom of the list of officers of the corps to which they are transferred, even though juniors in the line and engineer corps may become seniors in the construction corps, as has already happened in several instances.

5. A similar method is in force in the army, where transfer from the line to a staff corps involves resignation of the former commission and necessitates an officer's going to the bottom of the list to which transferred. As in the navy, this sometimes results in a change of relative position, seniors in the line becoming juniors in the corps to which last appointed.

6. The above methods of resignation and transfer have been unquestioningly accepted by the officers transferred as just and fair, and the accounting officers of the Treasury and Court of Claims have, in the cases of certain officers of the construction corps, allowed them the benefits of their previous service and paid them accordingly, such pay having been received for the past six years.

7. Should the present construction of the Supreme Court as regards the status of these officers be considered final, it will work very great injustice to certain professors of mathematics and naval constructors who resigned their commissions in other branches of the service and were then appointed to their present corps, believing that established rulings of the Treasury and Navy Departments would not be disturbed, and that they would continue to receive in their new grades the benefits of their previous service, and not be placed at a disadvantage as compared with their juniors in rank in the new corps, who are also their juniors in length of service in the navy.

8. In view of the above facts I beg to request permission from the department to seek relief from Congress, and also request that in its endorse-

corps. In such cases it has been the practice to require a new oath of office to be taken, which is not required in case of an ordinary promotion. It appears from the above statement that the department has always held that such transfer con-

ment the department may call attention to its practice in making such appointments, considering them as reëntries into the service, and may make such other remarks as it may deem proper concerning the justice of affording relief to the officers so injuriously affected by the decision of the Supreme Court.

Very respectfully,

W. L. CAPPS,

*Assistant Naval Constructor, U. S. N.*

The SECRETARY OF THE NAVY.

*Letter of the Chief of the Bureau of Construction.*

NAVY DEPARTMENT,

BUREAU OF CONSTRUCTION AND REPAIR,

WASHINGTON, D. C., *February* 14, 1894.

SIR: 1. In forwarding the enclosed communication from Assistant Naval Constructor Capps, I desire to express my hearty approval of any measure which may afford relief to those officers who have been so unfortunately affected by a recent decision of the Supreme Court.

2. If the present decision of the court holds, its immediate effect upon the construction corps will be to place certain officers in a most anomalous condition as regards pay, since it will reduce their compensation below that received by those several years their juniors, and in October, 1895, the seven senior assistant constructors will be receiving less pay than the assistant constructor now at the bottom of the list, although the latter entered the naval service from four to ten years after the above-mentioned seniors.

3. Naval Constructors Armistead, Baxter, and Stahl having been promoted, their present pay will not be affected, but their accounts will be charged with the amount claimed to have been overpaid them as assistants. Assistant Naval Constructor Capps, not yet having received his promotion to the grade of naval constructor, will have his pay immediately reduced to that received by the junior member of the corps, and in addition will have charged against him the total amount claimed to have been overpaid him by the accounting officers of the Treasury during the past six years by reason of his having been credited with his previous service in the line of the navy.

4. The above payments having been made by the accounting officers of the Treasury in conformity with previous decisions of the Court of Claims and the established rulings of the Navy Department as to reëntry into the service, it would seem a very great hardship to compel these officers to make restitution of the money paid by the government's authorized agents, in conformity with legal decisions, said payments having been received by

stitutes a reëntry into the navy, and accordingly officers so transferred have been placed at the foot of the list of the corps which they enter."

Now, this practice of the department, of which the court

---

the officers themselves in good faith as their right in virtue of their previous experience in the service.

5. I do not consider it proper for me to deal in the least with the question of law involved, but in equity it seems that an unwitting injustice has been done to officers whose high class-standing, special qualifications, and previous service caused their selection for appointment to other corps of the service in the interests of the government, and yet who find themselves after a lapse of several years deprived of all the benefits of their previous service and placed in a worse position as regards pay than those many years their juniors.

6. Aside from the interests of individuals involved in this case, I beg to impress upon the department the urgent necessity of taking such measures as it may deem just and expedient to rectify a wrong which would tend to impair the efficiency of the construction corps by giving least compensation to those whose greater experience and responsibility certainly entitle them to most consideration.

Very respectfully,

PHILIP HICHBORN,<br>
*Chief Constructor, U. S. N., Chief of Bureau.*

The SECRETARY OF THE NAVY.

---

*Letter of the Secretary of the Navy.*

NAVY DEPARTMENT,

WASHINGTON, *February* 28, 1894.

SIR: Referring to your letter of the 14th instant, forwarded through the chief of the Bureau of Construction and Repair, in which you state that the recent decision of the Supreme Court in the case of *The United States, Appellant,* v. *Albert W. Stahl* seriously affects the status of commissioned officers who have resigned from one branch of the service and have been appointed to another, inasmuch as it deprives such officers of the benefits of their previous service in computing longevity in the lowest grade having graduated pay, and ask permission to seek relief from Congress, I have to state that, after a careful consideration of the facts set forth in your letter and in that of the chief of the bureau, the department deems it entirely proper that you should seek such relief, and your request is therefore granted.

In the decision in question and in that of *The United States* v. *Philip R. Alger,* therein cited, the court holds that where an officer resigns from one corps of the navy for the purpose of accepting an appointment in another, his service is to be regarded as continuous service.

will take notice, seems wholly at war with the idea advanced
in the Government's brief that the appellee's service in the
engineer and construction corps is one continuous service;
for upon that theory we should expect to find the appellee
transferred to an equivalent rank in the construction corps
to what he had held in the engineer corps, instead of being
sent to the foot of the list, as he undoubtedly was.

In view, then, of this rooted and well-known practice of the
Navy Department, it is somewhat surprising that the counsel
for the government should have argued, with apparent confi-

---

The chief of the Bureau of Construction and Repair, in his communica-
tion above mentioned, states that the immediate effect of this decision upon
the construction corps " will be to place certain officers in a most anoma-
lous condition as regards pay, since it will reduce their compensation below
that received by those several years their juniors, and in October, 1895, the
seven senior assistant constructors will be receiving less pay than the
assistant constructors now at the bottom of the list, although the latter
entered the naval service from four to ten years after the above-mentioned
seniors."

It has been the invariable practice of the Navy Department to require
officers serving in one branch of the naval service to resign from the navy
before accepting appointment to any other branch of the service, and it
has further been the uniform practice to place the names of such officers,
without regard to their previous rank, at the foot of the list of officers in
the new corps.

In such cases it has been the practice to require a new oath of office to
be taken, which is not required in case of an ordinary promotion.

It appears from the above statement that the department has always
held that such transfer constitutes a reëntry into the navy, and accord-
ingly officers so transferred have been placed at the foot of the list in the
corps which they enter.

Under these circumstances, and inasmuch as a change in the practice of
the department in respect to the rank and pay of officers who by reason
of special qualifications and previous service have been selected for
appointment to other corps would result in serious hardship to such
officers, the department, concurring in the recommendation of the chief of
the Bureau of Construction and Repair on the subject, gives its approval
to your request for permission to seek relief from Congress.

Very respectfully,

H. A. HERBERT,
*Secretary of the Navy.*
Assistant Naval Constructor W. L. CAPPS, U. S. N.,
*Navy Department.*

dence, that the continuity of the appellee's service in the navy was not interrupted by his transfer from the engineer to the construction corps any more than if he had been promoted to another grade in the engineer service. This line of argument can only be accounted for as being the result of an apparent failure of counsel to recognize the distinction between transfer and promotion, which they seem to treat as interchangeable terms, although radically different.

In doubtful cases this court is accustomed to pay no little deference to the meaning placed on a statute by the department of the government whose duty it is to apply it to its subject-matter, and it is respectfully submitted that it would seem that under this rule of decision the meaning placed on the act of 1883 by the Navy Department, ever since its passage, and supported by the judgment of the Court of Claims, should be allowed controlling effect in the face of any doubt that may becloud the meaning of Congress.

In view, then, of these considerations, now seemingly brought to the court's attention for the first time, it is respectfully submitted, as an additional argument entitled to weight, that it would be severe if officers who have been transferred in the naval service and received longevity pay on the faith of this long-prevailing interpretation of the act of 1883 should now be compelled, upon a mere mistake of law, to refund what they have honestly and innocently received as their due.

As the chief of the Bureau of Construction and Repair says in his letter of February 14, 1894, hereto annexed, "the above payments having been made by the accounting officers of the Treasury in conformity with previous decisions of the Court of Claims and the established rulings of the Navy Department as to reëntry into the service, it would seem a very great hardship to compel these officers to make restitution of the money paid by the government's authorized agents in conformity with legal decisions, said payments having been received by the officers themselves in good faith as their right, in virtue of their previous experience in the service."

But, aside from the inexpediency of unsettling what has been once settled, the interpretation here contended for

should be adhered to, because, as we hope to show, it is closely interwoven with the good of the service, while, on the other hand, that insisted upon by the government would, if carried into effect, produce inequalities in pay which would be derogatory to the rank of the officers who have been transferred from one branch of the service to another under the old view of the act of 1883, and subject them to a demoralizing influence, springing from a sense of disappointment and of disparaging discrimination in favor of their juniors in the service, and would, furthermore, tend to cripple the service by placing a serious obstruction in the way of appointments in the future from one branch of it to another.

To show, in the striking way of concrete examples, how unjustly the view of the statute contended for by the government would operate, let us take for illustration the cases of Assistant Naval Constructors Lloyd Bankson and Richmond P. Hobson.

Bankson, who was appointed from the rank of assistant engineer on July 1, 1889, and who has been in the service sixteen years and four months, all told, would draw pay under the ruling of the court at the rate of $2200 per annum, whereas Hobson, who was appointed from the rank of naval cadet on July 1, 1891, and who has been in the service eight years and eight months only, is by the operation of the act of 1883 entitled to pay at the rate of $2600 per annum. Thus Bankson, who, by virtue of seniority, ranks Hobson in the construction corps, receives $400 less pay, which must ever be a solecism and a contradiction to the military apprehension.

By applying the interpretation contended for by the counsel for the government to the following examples taken from the corps of professors of mathematics, it will be more manifest still that the act so construed will defeat the underlying principle of longevity pay by placing a premium on leaving the service and then returning to it after some considerable interval with impaired efficiency.

In 1873 W. W. Hendrickson, a lieutenant commander in the navy, resigned for the purpose of accepting an appointment as professor of mathematics, was so appointed, and was

allowed by the Treasury Department the benefits of his previ-
ous thirteen years' service. In 1877 H. D. Todd, who had
also resigned when a lieutenant commander, in 1866, but who
had spent the intervening eleven years in civil life, was ap-
pointed a professor of mathematics, and he also was allowed
by the Treasury Department the benefit of his previous naval
service; but, under the view contended for by the govern-
ment, the former officer would be deprived of the benefits
of his service in the line of the navy, while the latter, his
junior in rank, would continue to receive credit for all his
service and would thus have the higher rate of pay for the
very reason which should give him the lower.

It would also seem proper to bring to the attention of the
court the fact that there are only fifteen officers who could in
any way be affected by the recent decision of the court, and
they are officers who were appointed to their present posi-
tions, by reason of special qualifications, their previous service
in other branches of the navy being considered of great bene-
fit to the government in the performance of their new duties.
In view of this fact it would seem a special hardship to de-
prive them of the benefits of such previous service in comput-
ing their pay, while other transferred officers whose service
was interrupted by a period of civil employment of greater or
less length and whose professional knowledge must have dete-
riorated somewhat in the interval receive all the benefits of
their previous service.

There would seem to be little room for doubt, therefore,
that the enforcement of this new reading of the statute would
necessarily have a disparaging effect on the rank of all officers
in Bankson's situation and would prove a source of more or
less demoralization, besides tending, as we have already said,
to hamper the service by discouraging transfers in cases where,
under the ruling of the court, the officer transferred would
not be entitled to a time credit on his new commission, because
an officer could hardly be expected to be willing to accept a
transfer which would entail such sacrifices. And this, it is
proper to remark, is *a very important consideration* in favor
of adhering to the old interpretation, for *all appointments to*

*the construction corps are made from the line and engineer corps* and not from the civil walk.

The good of the service is for that reason deeply implicated in the old practice.

In his letter to the Secretary of the Navy of February 14, 1894, hereto annexed, the chief of the Bureau of Construction says:

"If the present decision of the court holds, its immediate effect upon the construction corps will be to place certain officers in a most anomalous condition as regards pay, since it will reduce their compensation below that received by those several years their juniors, and in October, 1895, the seven senior assistant constructors will be receiving less pay than the assistant constructor now at the bottom of the list, although the latter entered the naval service from four to ten years after the above-mentioned seniors."

Again, he says:

"I do not consider it proper for me to deal in the least with the question of law involved, but in equity it seems that an unwitting injustice has been done to officers whose high class-standing, special qualifications, and previous service caused their selection for appointment to other corps of the service in the interests of the government and yet who find themselves, after a lapse of several years, deprived of all the benefits of their previous service and placed in a worse position as regards pay than those many years their juniors."

It will be seen that the Secretary of the Navy, in his letter hereto annexed, is in entire agreement with the chief of the Bureau of Construction.

This court being powerless to reach the firmly rooted practice of the Navy Department that treats a transfer as a reëntry into the service, that being a matter which falls within the inviolable domain of executive discretion, it is respectfully submitted that the only way to preserve consistency and avoid the anomalies and evils above pointed out seems to be, by adhering to the interpretation placed on the act by the department having full authority over the whole subject, and a more intimate acquaintance with the bearings of

the act than any other expositor or department of the government could, expect to have.

As there is no intimation in the law that the right to longevity pay is dependent on any particular time during which the officer has been out of the service when he last entered it, and as the officer transferred is during the interval between resignation and reappointment, however short the interval may be, as much out of the service, according to the settled practice of the Navy Department, as though he had laid down his first commission without any expectation of reappointment, it would seem that the court may restore harmony by giving the old interpretation its sanction without doing violence to a single word of the statute.

But, aside from the act of 1883, it is respectfully submitted that the appellee ought to have an opportunity to argue the question whether the United States is entitled to recover back money paid him under a mistake of law and with full knowledge of all the facts.

This precise question was not raised by the counsel for the government, and, it would seem, could not have been properly raised in the state of the pleadings, the government not having pleaded the alleged excessive payments by way of set-off, and the claimant, being therefore completely without notice by the pleadings that any such question as his liability to refund money paid to him as compensation, under a mistake of law, would be raised, should be allowed to discuss the question, especially as it is *res integra* in this court.

The Court of Claims has held that the government cannot, any more than an individual, recover back money upon the ground that it was paid under a mistake of law. *Hedrick* v. *United States*, 16 C. Cl. 88; see also *Miller's Case*, 19 C. Cl. 338, 354; *Palen's Case*, 19 C. Cl. 389, 394; *Hartson's Case*, 21 C. Cl. 451.

But this court has never decided the point, though it has several times referred to it. *United States* v. *Philbrick*, 120 U. S. 52, 59; *McElrath* v. *United States*, 102 U. S. 426, 441; *United States* v. *Burchard*, 125 U. S. 176.

It is respectfully submitted that the reasons above given

appear to be sufficient to entitle the appellee to a rehearing, or, at the very least, entitle him to request the court to strike from its opinion, in the case of *United States* v. *Philip R. Alger*, the reasoning and observations in which are understood to apply to the case of the appellee as well, the intimation that it is a possible hypothesis in the case that the appellee might have sent in a formal resignation "for the purpose of eluding the statute and claiming longevity pay on the higher scale."

MR. JUSTICE GRAY delivered the opinion of the court.

These two cases were decided at the present term in favor of the United States, upon the ground that under the act of March 3, 1883, c. 97, (22 Stat. 473,) an officer of the navy, who resigns one office the day before his appointment to a higher one, though in a different branch of the service, is only entitled to longevity pay as of the lowest grade, having graduated pay, held by him since he originally entered the service. 151 U. S. 362, 366.

The principal grounds of the petitions for rehearing, and the only ones which require to be noticed, were not suggested in the briefs upon which the cases were submitted for decision. Those grounds are that, by the settled practice of the Navy Department, (as shown by documents now laid before the court for the first time,) officers in one branch of the service are required to resign from the Navy before accepting an appointment in any other branch of the service; the longevity pay of officers so transferred from one branch of the service to another is computed upon the theory that the new appointment is a new entry into the service; and the names of such officers are placed, without regard to their previous rank, at the foot of the list of officers of the same grade in the new corps.

As it now appears that the resignation of every officer, under such circumstances, is absolutely required by the Navy Department, it is evident that no case of the kind could be open to the suggestion made, by way of hypothesis only, and not as applicable to either of these claimants, in the former

opinion in *Alger's case*, that if such a formal resignation were sent in for the purpose of eluding the statute and claiming longevity pay on the higher scale, the attempt would be unbecoming in the officer or his advisers.

But the habitual requirement of such a resignation by the Navy Department, as a preliminary to the new appointment, puts beyond doubt (what was before in some degree a matter of inference from the specific facts found) that each resignation was tendered with no intention of leaving the service; and confirms us in the opinion heretofore announced, that the actual service of each claimant from the time he first entered the navy was for a single and continuous period, within the meaning of the longevity pay act.

If the meaning of that act were doubtful, its practical construction by the Navy Department would be entitled to great weight. But as the meaning of the statute, as applied to these cases, appears to this court to be perfectly clear, no practice inconsistent with that meaning can have any effect. *Swift Co.* v. *United States*, 105 U. S. 691, 695; *United States* v. *Graham*, 110 U. S. 619; *United States* v. *Tanner*, 147 U. S. 661.

This case does not present for judicial determination (if it could be so presented in any form) the question whether the practice of the Navy Department with regard to the rank and precedence of such officers conforms to section 1485 of the Revised Statutes, which directs that " the officers of the staff corps of the Navy shall take precedence in their several corps and in their several grades, and with officers of the line with whom they hold relative rank, according to length of service in the Navy."

In the petitions for rehearing, illustrations are given of the inequality of the operation of the longevity pay act, as construed by this court. But as that act, upon any possible construction, distinguishes the case of continuous from that of interrupted service, it is impossible that there should not be some cases of apparent disproportion in the allowances for length of service. The duty of the courts is to apply the general rule prescribed by Congress. If injustice attends the application of the rule in particular cases, Congress alone can

afford a remedy, by changing the rule for the future, or granting additional compensation for the past.

*Petitions for rehearing denied.*

MR. JUSTICE WHITE, not having been a member of the court when these cases were argued, took no part in the decision of these petitions.