WeldoN, J.,
delivered the opinion of the court:
On the 1st day of May, 1898, the “United States naval force on Asiatic Station,” under the command of Commodore George Dewey, in the prosecution of the war declared by the United States on the 25th day of April, 1898 (as dating from *187 tbo 21st of April, 1898), against the Kingdom of Spain, encountered the Spanish squadron in the waters of Manila Bay off the coast of the island of Luzon, and in an engagement lasting from 5.15 a. m. until 12.30 p. m. the United States forces succeeded in destroying and capturing the whole of the Spanish fleet and the achievement of a victory having scarcely a parallel in the annals of naval warfare. As a result of that victory the honorable the Secretary of the Navy addressed a communication to this court, under the provisions of the act of March 3, 1883, entitled “An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government” (22 Stat. L., 485), as amended by section 13 of the act entitled “An act to provide for the bringing of suits against the Government of the United States,” approved March 3, 1887 (24 Stat. L., 507), embodying the following questions:
“1. Whether the vessels for the sinking or destruction of which bounty is claimed were of inferior or of equal or superior force to the vessels of the United States engaged, and whether such vessels of the enemy were sunk or destroyed in action or ‘ in consequence of injuries sustained in action,’ or immediately thereafter ‘for the public interest,’ as contemplated in the last clause of section 4635 of the Revised Statutes.
“The determination of these questions will fix the rate of bounty to be paid at $200, or $100, ‘ for each person on board ’ such vessel of the enemy ‘at the commencement of the engagement,’ or $50 ‘for every person * * * on board at the time of such capture,’ as the case may be.
“2. What vessels of the enemy among those sunk or destroyed fall within the statutory provisions authorizing the payment of bounty.
“ 3. What vessels of the United States are, in any given case, entitled to share in bounty.”
Embraced in the communication by the Secretary are the following paragraphs:
“It may be proper to add that the attitude of the Department toward these claims is not in any sense one of hostility, it being considered that the claimants belong to a meritorious class upon whom the Government had by statute directed the bestowal of bounty for the performance of patriotic service. The Department does not, therefore, desire to antagonize *188 these claims, but seeks merely, by the reference herein made, to secure the judicial ascertainment of the rights of all parties concerned, in order that the nation’s bounty may be promptly and equitably dispensed.
“Entertaining these views, it is requested that such early procedure in the matter may be had as the court may find practicable.”
Accompanying the foregoing communication the Secretary transmitted, in pursuance of the statute, all papers in his Department applicable to the subject-matter.
In pursuance of such reference, the claimant filed a petition, in which it is in substance alleged that on the 1st of May, 1898, an engagement took place between the ships of the United States under his command and vessels of war belonging to the Kingdom of Spain; and as a result of such engagement a number of Spanish vessels of war were sunk or otherwise destroyed; that the number of men on board of the enemy’s vessels at the commencement of the engagement was in excess of the number on board of the American vessels; that in said engagement the enemjr’s ships were supported by powerful shore batteries and torpedoes, and that the enemy’s vessels, supported as aforesaid, were of superior force to the vessels of the United States. It is also averred that some of the vessels belonging to the enemy were not destined, and have sinee been repaired and taken into the service of the United States, and for such vessels no compensation is sought in this proceeding.
The petition concludes with a prayer for a judgment under the thirteenth section of said last-named act upon the ground that the claimant has a legal claim under the provision of section 4635 of the Kevised Statutes.
The claimant having averred the right of a judgment under the thirteenth section of the act of 1887 (supra), it becomes necessary, as a preliminary question, to determine the right of the claimant to such judgment, in addition to a report of the facts and opinion of the court to the Department under the act of March 3, 1883 (supra).
The thirteenth section of the act of 1887 provides * * * “If it shall appear to the satisfaction of the court, upon the facts established, that it has jurisdiction to render a judgment or decree thereon under existing law, or under the provisions *189 of this act, it shall proceed to do so, giving to either party such opportunity for hearing as in its judgment justice shall require, and report its proceedings therein to either House of Congress or to the Department by which the same was referred to this court.”
The claim which is made in this -proceeding is based upon section 4635 of the Revised Statutes, the latter part of which is as follows:
“A bounty shall be paid by the United States for each person on board any ship or vessel of war belonging to an enemy at the commencement of an engagement, which is sunk or otherwise destroyed in such engagement by any ship or vessel belonging to the United States or which it may be necessary to destroy in consequence of injuries sustained in action, of one hundred dollars, if the enemy’s vessel was of inferior force, and of two hundred dollars, if of equal or superior force, to be divided among the officers and crew in the same manner as prize money.”
Though many cases have been prosecuted under the act of the 3d of March, 1883, and the act of 3d of March, 1887, since the passage of the last act, in which the claimant has sought a final judgment, the court has not in the exercise of its plenary judicial function determined the rights of the claimant except as advisory, either of Congress or the Department.
The purpose of the thirteenth section is to settle and adjust controversies and claims upon the basis of the legal right to recover, where that can be done, leaving the parties subject only to the jurisdiction of this and the Supreme Court. The act of the 3d of March, 1887, provides jurisdiction in this court in “All claims founded upon the Constitution of the United States or any law of Congress.”
Applying the facts found to the thirteenth section of the act of March, 1887 {supra), and to the first clause of said act defining the jurisdiction of this court, “it appears to the sat-" isfactibn of vthe court ” that the claimant is entitled to recover a judgment in this proceeding for the amount which, from our construction of section 4635 of the Revised Statutes, we may determine is due him as the commander of the United States naval forces in what is known as the battle of Manila Bay.
The issue in this case is limited in its range as a judicial *190 inquiry to a construction of a statute of the United States which, though of long standing, has never been judicially construed by the Supreme Court to the extent of settling by an authoritative construction the exact question involved in this inquiry.
This court is therefore, required to perform the dutjr of determining the purpose and intent of the legislature in the enactment of the statute under which the claim is made, unaided by judicial determination by the court óf ultimate interpretation and decision.
The first inquiry addressed to the court by the honorable the Secretary of the Navy is as follows:
“1. Whether the vessels for the sinking or destruction of which bounty is claimed were of inferior1 or of equal or superior force to the vessels of the United States engaged, and whether such vessels of the enemy were sunk or destroyed in action or ‘inconsequence of injuries sustained in action,’ or immediately thereafter ‘for the public interest,’ as contemplated in the last clause of section 4635 of the Revised Statutes ? ”
By reference to the findings it will be seen, that that question is answered in two forms not contradictory of each other, but in order to meet the difference in the construction of the statute on the part of the claimant and the defendants. It is shown — quoting the substance of the findings — that, leaving-aside shore batteries and submarine defenses, the American ships and armament were superior in force to the Spanish ships and armament, but taking into consideration the guns at Corregidor, El Fraile, and other forts at the entrance of the bay, and those at Manila and Cavite, and the torpedoes and mines in the bay and entrance to it, the enemy’s force was superior to the force of the vessels of the United States.
The second inquiry propounded by the communication of the Secretary of the Navy is as follows: “What vessels of the enemy among those sunk or destroyed fall within the statutory provisions authorizing the payment of bounty?” An answer to this question may be found in the findings of fact preceding this opinion and upon which it is based.
The third inquiry is as follows: “What vessels of the United States, are, in any given case, entitled to share in .bounty ?”
*191 In connection with that inquiry the communication states:
“The question whether the provisions of section 4635 are applicable to such vessels of the United States only as participated actively in the destruction of the enemy’s vessels, or extend to those within signal distance of the vessel or vessels so participating, is doubtless involved in this branch of the subject; but, whether this be true or not, it is evident that the difficulties enumerated under the' second question again arise here. Upon various occasions during the war when vessels of the enemy were destroyed there were present and either actively participating or within signal distance vessels of the regular Navy of the United States; ‘ converted ’ vessels, of which the Gloucester may be mentioned as a type; chartered vessels, such as the St. Paul; vessels of the Revenue-Cutter, Coast Survey, and Light-House services; dispatch boats, transports, colliers, supply and hospital vessels, etc. While the applicability of section 4635 of the Revised Statutes to some of these vessels is entirely clear, it is not so as to others, and equitable distribution of bounty can not be made until the rights of all claiming to share therein shall have been determined.”
Having determined that the claimant is entitled to a judgment under the thirteenth section of the act of March 3, 1887 (supra), as the inquiry propounded in the third interrogatory does not properly arise in this proceeding, and as we are advised that the question arises in other cases pending in this court coming within the reference of the Secretary of the Navy, we reserve an answer to interrogatory third until the trial and decision of a case in which the question is properly involved. The communication of the Secretary of the Navy being applicable to the other cases, and other counsel appearing in those cases, it is proper that we should confine the opinion in this case to the limits of the legal controversy established by the facts of the present proceeding.
The only question about which there is any contention is whether the crews of the American ships are entitled to the sum of $100, upon the theory that in legal contemplation the vessels of the United States were of superior force to those of the Spanish fleet, or whether they are entitled to $200 each, upon the theory that in law the vessels of the United States were inferior in force to the Spanish vessels. It is contended on the part of the claimants that the vessels of the United States were inferior in force to the Spanish vessels, while it *192 is contended by the defendants that thejr were of superior force. If the contention is to be determined by adding to the Spanish force of the vessels the batteries on shore, the mines and torpedoes of Manila Bay, then the Spanish vessels, as constituting a condition, were superior to the force of the American vessels. As has been said, no decision of the Supreme Court has determined the exact question as presented by this record, and which constitutes the issue in this proceeding.
In the examination of the case we have most carefully considered the decision upon which the counsel for the claimant predicate the theory that the environment of the Spanish vessels is to be included in the determination of the question as to the relative force of the respective fleets.
The case of the United States against Farragut, decided by the Supreme Court of the United States and reported in 22 Wallace, 406, was an appeal from the court of the District of Columbia in a case growing out of the capture of New Orleans by Admiral Farragut in the year 1862.
It is said in substance, in the statement of the case in the Supreme Court of the United States, that the result of the reduction of the forts was the capture of large number of vessels, coal, and other property. All this property was appraised at the time by a board of officers duly appointed for that purpose. But there being no district court in the eastern district of Louisiana open at that time, and much of the property steamers unfit to be sent to sea, and much of it being necessarily used by the Army and Navy of the United States in their further operations in the Gulf and Mississippi River, none of it was sent to be condemned, but appraised at the time of the capture.
Congress accordingly, on the 3d of March, 1869 (15 Stat., 336), passed an act in substance that the said vessels shall now be entitled to the benefit of prize law in the same manner as they would have been had the district court for the eastern district of Louisiana been opened and the property taken by said vessels had been libeled therein; and any court of the United States having admiralty jurisdiction may take and have cognizance of ail cases arising out of said capture. In pursu- *193 anee of that statute a libel was filed in tbe supreme court of the District of Columbia on the 26th of April, 1869.
While said proceeding was pending in the supreme court of the District, the subject-matter of the proceeding was referred to the determination of arbitrators chosen by the respective parties, and it was agreed that their award should be final upon all questions of law and fact involved in the cases, and that such award might be entered as a rule and decree of the court.
The arbitrators chosen as aforesaid made an award as fol lows, to wit:
“First. That the capture was not a conjoint operation of the Army and Navy.
“Second. That the 42 vessels whose names were given produced in the capture of the United States.
.* * * * *
“Fifth. That all this property was lawful prize of war and lawfully subject to condemnation as such.
“Sixth. That in the engagement which resulted in the capture of those ships the entire force of the enemy was superior to the United States ships and vessels engaged.”
The United States made a motion to set aside the award controverting all the facts found by the arbitrators; but the court refused to set aside the award, and on the contrary, entered a decree of the court confirming the award. From that decree the United States took an appeal. After the case came into the Supreme Court of the United States, the Attorney-General dismissed the appeal as to the coal and certain vessels, amounting in the aggregate sum of $613,520. In the Supreme Court some of the exceptions to the report of the arbitrators were considered; and it is said “where the award finds facts it is conclusive; where it finds and announces concrete propositions of law, unmixed with facts, its mistake, if one is made, could have been corrected in the court below, and can be corrected here. Where the proposition is one of mixed law and fact in which the error of law, if there be one, can not be distinctly shown, the parties must abide by the award.” The court says, “A glance at these grounds will show that all of them except the last is an attempt to reopen the question submitted to the arbitrators, because they had *194 decided erroneously questions of pure fact or of law and fact in which the former was so mingled with the latter as to be inseparable.”
The court further says, “Having- found the captor, the property captured, the name and character of the vessel engaged in it, and the nature of the capture, the only question open was the character of the captured property.” The court concluded that “ It does not appear, therefore, that in holding these vessels liable to capture in condemnation as lawful prizes of war the arbitrators violated any principle of prize law; but it is quite clear that in awarding the value of these vessels to the captors as prize, and in addition 40 per cent of that value for salvage, they did violate law and justice.” The last of the opinion has reference to certain vessels which belonged to certain loyal owners which were delivered to them, and upon which the decree allowed military salvage. That portion of the decree was held to be erroneous by the Supreme - Court, and was therefore reversed.
The finding of the arbitrators and the court below that the force of the enemy was superior to the force of the United States ships and vessels was accepted as true by the Supreme Court, and, therefore, no question was made as to whether the superiority of force was to be determined by the force on board the ships of the enemy or might include, as a force of the enemy’s ships, the forts and batteries on land.
From the well-known facts of history, it must be assumed that the force which was overcome by Admiral Farragut in the capture of the prizes was superior because of the forts and batteries on shore; and that in making the award and entry of the decree the force of such forts and batteries were included in calculating the force of the er emy employed in the engagement.
The decision and decree of the district court supports the contention made by the counsel for the claimant; but the decision of the Supreme Court did not reach the question at issue in this case, for the reason that it was not properly before the court at the time the case was decided, having béen eliminated by the withdrawal of the appeal as to the prize vessels affected by that question, and the further reason that the *195 fourth finding of the award and the decree was upon a question of fact which the Supreme Court by its reasoning held to be conclusive and not the subject of inquiry in the appellate court.
The case of Porter v. The United States (106 U. S. R,., 607) does not affect the question involved in this case. In that case a decree had been entered in the district court of the District of Columbia upon the legal theory that, in estimating the force of the enemy, the force of ‘ ‘ batteries and other adjuncts ” might be included in the force of the enemy in determining the rights of the capturing or destroying vessels. That decree, as it is said in the° brief of counsel for the claimant, was reversed on other grounds in general term of the district court. On the appeal of the case to the Supreme Court the only question decided is as to the rights of the claimants to bounty under the act upon which it is claimed in this proceeding. That case involved the right of bounty where the destruction was the result of combined efforts of the land and naval forces acting in conjunction with each other. It wfes held, in substance, by the Supreme Court that bounty was not allowed by the act of Congress of June 30,1864, c. 174, where the vessels of the enemy were during the rebellion destroyed by the combined action of the sea and land forces of the United States.
The court says:
“No pecuniary reward is conferred for anything taken or destroyed by the • Navy when it acts in conjunction with the Army in the capture of a fortified position of the enemy, though the meritorious services and gallant conduct of its officers and men may justly entitle them to honorable mention in the history of the country.”
The same doctrine is enunciated in the case of the Siren. (13 Wall., 389.)’
In the case of the Selma (21 Fed. Cases, p. 1045), cited by claimants, the question discussed and decided was as to the right of a certain ship to share in the distribution of the prize — it being within what is called signal distance. Although that question is very ably treated by the learned judge in the opinion, it sheds but little light, if any, upon the question *196 involved in this case. There was no controversy in that proceeding as to whether the capturing’ force was inferior or superior to the captured vessels. The only thing which is said in the opinion which can be utilized as indicative of the proper construction of the statute is that it is said by the court: “In cases arising under this part of the statute, it is held that the object of the legislature was to encourage personal gallantry and exertion, and constructive captors are, as a general rule, excluded from sharing in this bounty, although under the same statute and concerning the same vessels they may come in as takers of the prize itself.” So it is said in this case, by counsel for claimant, that the policy of the legislature was to encourage heroism and personal courage in the naval service of the United States, and that where a condition of great danger is braved and overcome that the force of that condition and danger may be included within what is technically known as the force of the vessel. That is an argument in favor of the construction contended for by the claimant, and in a doutful case growing out of the ambiguity of the law it should be entitled to forceful respect.
The case of the Cherokee decided in the district court of Massachusetts (5 Fed. Cases, p. 550) involved a controversy as to who was entitled to share, and not as to whether the capturing vessels were of superior or inferior force; and although the case is very elaborately discussed in the opinion . of the learned judge, as it did not involve the issue in this case, nothing is said tending to guide the court in the construction of the statute under consideration. It may be regarded as remarkable that in many cases coming within prize jurisdiction after the passage of the act of 1864, the question of inferior and superior force of respective fleets has not been discussed and decided, but so it is.
We have carefully examined the decisions cited by counsel for the claimant in the oral argument, but do not find that they maintain the theory of construction upon which the demand for the larger amount of the statute is claimed.
Aside from the decision and decree of the district court of the District of Columbia, founded on the award of an arbitration, we are without express authority upon the proper *197 construction of tbe statutes upon the question at issue in this proceeding, and must therefore, subject to that decision, determine for ourselves our duty in the premises.
The findings show that the force of the vessels of the United States wa,s superior to that of the enemy, disjoined from the force arising from forts and batteries on the shore of Manila Bay and torpedoes and mines within the waters of the bay, but if to the force of the Spanish vessels there be added the belligerent power of the forts, batteries, torpedoes, and mines, as a part of the condition arising from their environ ment, the force of the Spanish vessels was superior to the force of the vessels of the United States. The statute under which the claim is made provides “that a bounty shall be paid by the United States for each person on board any vessel or vessels of war belonging to an enemy at the commencement of an engagement which is sunk or otherwise destroyed in such engagement by any ship or vessel belonging to the United States, or which it maybe necessary to destroy in consequence of the injuries sustained in action, of $100 if the enemy’s vessel was of inferior force, and $200 if of equal or superior force, to be divided among the pfficers and crew in the same manner as prize money. ”
The question arising upon the statute is as to what is meant by the term, “if the enemy’s vessel was of inferior, * * * if of equal or superior force.” Is the force contemplated by the statute such force only as is necessarily incident to the men employed upon the vessel, and to the force of the vessel arising from its construction, its armament, equipment, and development as an instrumentality of war? It will be seen that the force specified by the terms of the law is the force of “the enemy’s vessel,” thereby in terms precluding from the consideration of force the environment of power which may surround the vessel, but forming no necessary part or portion of it. The statute under consideration is to receive by the court such a construction as its terms necessarily import and require. It is not a question of what might be called unwritten law, but a question of purely statutory construction, and the intent of the legislature must be deduced from the terms employed in the phraseology and words of the statute. *198 Courts have no power other than the interpretation of the law as in their judgment it exists. Questions of polhw addressing- themselves to other branches of the Government are not incident to the judiciary. They have no policy and no authority save and except the declaration and application' of the law as in their judgment it may seem to exist. Congress have passed the statute and defined its purposes in the express averment of words. Courts are constrained to follow the import of those words in the determination of the rights of parties and of the Government. In doubtful cases arising from ambiguous language courts will inquire into surrounding circumstances, having in view the history of the times and the condition intended to be affected by the law in coming to a conclusion as to its proper construction. But unambiguous words, importing in and of themselves the purpose and will of the legislature, must be permitted to perform their legitimate functions in the development and ascertainment of that will. Congress intended, by the act of 1864, to reward, as has been said, personal bravery and gallant encounter, but it does not follow from that that they intended beyond what they have expressed in the words of the law.
No cases have arisen upon the statute involved in this proceeding except the cases referred to, and none can arise hereafter, as Congress on March 3, 1899 (30 Stat. L., 1007), repealed all the provisions of law “authorizing the distribution among captors of the whole or any portion of the proceeds of vessels, or any property hereafter captured condemned as prize, or providing for the payment of bounty for the sinking or destruction of vessels of the enemy hereafter occurring in time of war.”
From this view of the law, the court determines that the claimant is entitled to recover on the basis of fact that, excluding the batteries, torpedoes, and mines, the force of the vessels of the Spanish fleet was inferior to the force of the American vessels, and that therefore the claim comes within that clause of the law which allows the sum of 1100 for each person on boai’d the vessels sunk and destroyed, and a judgment is hereby ordered on that theory for the sum of nine thousand five hundred and seventy dollars.