WeldoN, J.,
delivered the opinion of the court:
The claimant brings suit to recover the sum of $85.28 due him, as he alleges, for tnwel pajr and commutation of subsistence from the place of his discharge as a soldier of the United States to the place of his enrollment as such.
The facts show, that the claimant enlisted as a private in Company L, Twenty-fourth Infantry, United States Army, on March 13, 1899, at Indianapolis, Ind., and was discharged on his own application on March 12, 1900, at Fort Wrangell, *55 Alaska, bjr Special Orders, No. 31, paragraph 23, Adjutant-General’s Office. The portion of said order which is necessary to bo considered is as follows:
‘“By direction of the Assistant Secretary of War, Peter W. Barnett, Company L, 24th U. S. Infantry, at Fort Wrangell, Alaska, will be discharged from the service of the United States on March 12, 1900, by the commanding officers of his station. This soldier is not entitled to travel pay. * * *
“By command of Major-General Miles.”
The distance from Fort Wrangell, Alaska, to Indianapolis, Xnd., by the shortest usually traveled route is 3,283 miles, and the claimant’s pay per day was 52 cents.
It is insisted upon the part of the claimant, that under and by virtue of the provisions of section 1289 of the Revised Statutes he is entitled to the sum demanded. The section is as follows:
“When an officer is (honorably) discharged from the service (except by way of punishment for an'offense) he shall bo allowed transportation and subsistence from the place of his discharge to the place, of his residence at the time of his appointment or to the place of his original muster into the service. The Government may furnish the same in kind, but in case it shall not do so he shall be allowed travel pay and commutation of subsistence, according to his rank, for such time as may be sufficient for him to travel from the place of discharge to the place of his residence or original muster into service, computed at the rate of one day for every twenty miles.”
To maintain the theory of plaintiff’s right to recover counsel cites the case of Thornton v. The United States (27 C. Cls. R., 342), in which case it was held that the plaintiff was entitled to recover notwithstanding he was discharged upon his own application. The case was appealed to the Supreme Court and reversed upon a point which was not raised in the comb below. The. decision of the Supremo Court reversing the case, did not pass upon the question as to what were the rights of the claimant as determined by the Court of Claims.
It is insisted by the defendants that the uniform and long-continued practice of the Government in the construction of this and similar statutes is against the right of the party to recover, where the discharge is granted at the request of the *56 soldier, which contention is sustained b3r a reference to the authorities. This case therefore presents the question, as to whether that continued construction of the Department of similar statutes is to adversely^ determine the claim of the plaintiff in this proceeding.
The Supremo Court of the United States and this court have in manjT decisions recognized the binding force of what may be called administrative law, and in doubtful cases the Supreme and this court have followed the law as established by the continued construction of a Department.
In the case of The United States v. Johnston (124 U. S., 237) in the syllabus it is said:
“And all this brings the practice within the well-settled rule that the contemporaneous construction of a statute by those charged with its execution, especially when it has long-prevailed, is entitled to great weight and should not bo disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous.”
Tt is said in the decision of the Comptroller (5 Com. Dec., 117): “An officer or soldier discharged for his own convenience is not entitled to traveling allowances from the place, of his discharge to the place of his enlistment,” and in support of this theory cites Third Comptroller’s Decisions, pages 397, 640.
In Fifth Comptroller’s Decisions, page 989, the same doctrine is announced, and it is said, “It has been uniformly held by the accounting officers that an officer or soldier discharged for his own convenience is not entitled to travel pay-.’'
The case of Price v. The United States (4 C. Cls. R., 164) is based on this state of facts: The claimant was a lieutenant in the Thirty-ninth Iowa Volunteers during the civil Avar, and Avas enlisted into that service at Adel, State of IoAva; was discharged upon his oavii resignation (because of physical disability) in the State of Georgia; furnished with transportation as far as Few York, but refused transportation to his place of enlistment. He brought suit in this court for the cost of transportation from NeAV York to IoAva, and the court, after deciding adversely to his claim, by its reasoning, said:
“It appears that a large number of officers were discharged from service under circumstances like those shown in this *57 case, who had been refused .traveling allowances; and it being suggested to the court that this is the pioneer of a large class of cases designed to test in the court of last resort the propriety of refusing such allowances, we shall render a judgment in his favor, expecting the United States to take an appeal in the case, which the claimant could not do if the judgment were against him. It is therefore ordered that a judgment be entered in favor of the claimant for traveling allowances from the place of his discharge from the service of the United States, as an officer, to the place of his enlistment, making the sum of two hundred and thirty-four dollars.”
According to the expectation of the court, that case was appealed to the Supreme Court, and by a mandate of that court filed in the Court of Claims May 9, 1871, the Supreme Court ordered the judgment affirmed by an equal division of that court.
The plaintiff, not having performed the full requirement in time of his enlistment, ivas upon his own application discharged from the service of the United States, and not “by way of punishment for an offense.” It is impossible to determine, aside from the desire of the plaintiff to be relieved from further service, what actuated the officer of the Arm}' representing the defendant in acquiescing in the request of the plaintiff. There may have been a military condition on the part of the defendants inducing to acquiesce in the request of plaintiff.
In the argument, counsel for the claimant insisted that there is no room or necessity for a construction of the law which governs the rights and obligations of the parties; that the words themselves (it appearing that claimant ivas not discharged by way of punishment for an offense) are without construction sufficient to maintain his right to recover; and that, when upon its face the statute is unambiguous, it is not the duty of the court nor its right to construe the statute. In the maintenance of that theory he cites the case of Dewey (35 C. Cls. R., 197) and the same case decided in the Supreme Couid (178 U. S., 510) in affirmance of the decision of this court, where1- the doctrine for which he contends, as he claims, is recognized and enforced. It is said by this court that — •
“It is not a question of what might be called unwritten law, but a question of purely statutory construction, and the intent of the legislature must be deduced from the terms *58 employed in the phraseology and the words of the statute. Courts have no power other than the interpretation of the law as in their judgment it exists. Questions of policy addressing themselves to other branches of the Government are not incident to the judiciary. They have no policy and no authority save and except the declaration and application of the law as in their judgment it may seem to exist. Congress have iiassed the statute and defined its purposes in the express averment of words. Courts are constrained to follow the import of those words in the determination of the rights of parties and of the Government. In doubtful cases arising from ambiguous language courts will inquire into surrounding circumstances, having in view the history of the times and the condition intended to be affected by the law in coming to a conclusion as to its proper construction. But unambiguous words, importing in and of themselves the purpose and will of the legislature, must be permitted to perform their legitimate functions in the development and ascertainment of that will.”
In the Supreme Court it is said:
“Our province is to declare what the law is, and not, under guise of interpretation or under the influence of what may be surmised to be the policy of the Government, so to depart from sound rules of construction as in effect to adjudge that to be law which Congress has not enacted as such. Sere the language used by Congress is unambiguous. It is so clear that the mind at once recognizes the intent of Congress. Interpreted according to the natural import of the words used, the statute involves no absurdity or contradiction, and there is consequently no room for construction. Our duty is to give effect to the will of Congress, as thus plainly expressed.” (United States v. Fisher, 2 Cranch, 358, 399; Lake County v. Rollins, 130 U. S., 662, 670.)
In the case of Thorton, supra, it is said:
“The amendment enacted by the act of 1877, in striking-out the word ‘ honorabty ’ and at the same time inserting the words ‘ except by way of punishment for an offense,’ was undoubtedly intended to relieve courts and accounting- officers from the embarrassment of determining whether a discharge was honorable or dishonorable. The question now is whether the amendment did more than this — whether it overruled the rulings and usage of the accounting officers for a period of forty-five years and gave, or was intended to give, transportation to soldiers whose discharge at the time and place of discharge was of their oivn seeking — was a favor and not a right.
“ Whatever may have been the understanding of the com- *59 mitten which reported the •amendment or the members who voted for it, the court must take the intent of Congress as it stands expressed in the statute which they have made. As the law stood by departmental construction of more than forty-live years of unquestioned usage, a soldier honorably discharged was entitled to transportation from the place of his discharge to the place of his enlistment, except in cases where he was discharged before the .expiration of his term of enlistment at his own request. The amendment came and changed the law as thus administered. The reenacted law declares an exception, which is not the exception of the Executive Departments. Ercejrfio próbat regulam. Where a statute declares one exception, the judiciary can not declare that another was intended. Here the statute as amended declares that 1 when a soldier is discharged from the service ’ ‘ he shall be allowed transportation and subsistence from the place of his discharge to the place of his enlistment,’ ‘except’ when his discharge is ‘bj'way of punishment for an offense.’ In this case the discharge not having been for the punishment of an offense, the case came within the rule and not within the exception.'’
Thus it will be seen that the substantial question involved in this case has never been directly and definitely passed upon by the Supreme Court of the United States. The law of the case as laid down in the opinion of the court below was against the plaintiff’s right to recover, but the judgment rendered by the court Avas in favor of the plaintiff, and that judgment in its legal- effect has been affirmed by the divided opinion of the Supreme Court.
It would seem from this condition of the law, notwithstanding the uniform construction of the Department, that the question involved in this proceeding is one which should be authoritatively settled by the judgment and opinion of the court of final jurisdiction. And that being true, in order that that purpose may be accomplished, a judgment is given for the claimant for the sum of $8&.28, following the practice which is recognized by this court in the Price case on account of the importance of the question involved and the uncertainty Avhioh surrounds the question, because of the unsettled state of the law as existing in the judicial department of the Government.