WeldoN, J.,
delivered the opinion of the court:
The case of Harry A. Clark, No. 22397, and the case of Edward G. Pierson, No. 22538, which are in many particulars similar, were argued and submitted at the same time and will be considered in one opinion.
In the case of Clark the findings show in substance that he enlisted in the military service of the United States as a private in the Thirtieth Regiment United'States Infantry Volunteers on the 18th day of July, 1899j and served faithfully as such beyond the limits of the United States, to wit, on the Pacific Ocean and in the Philippine Islands, and that ho was honorably discharged from such service on the 16th of October, 1900, without receiving a furlough. His regiment was not discharged until some time after that date. The regiment of which he was a member was organized under the act of March, 2, 1899 (12 Stat. L., 979), and he was mustered into the service as private under said act for the term of two years and four months, unless sooner discharged.
He presented no claim to the Treasury Department for the reason that it had been decided by the Comptroller that troops enlisted under the act of March 3, 1899, are not entitled to extra pay under the act of Januaiy 12,1899 (30 Stat. L., 784).
The case of Pierson, No. 22538, differs from the Clark case in this, to wit: That the regiment of which the claimant was a member was mustered out and discharged from the service of the United States.
Clark was discharged from the service personally, his regi *69 ment remaining in the service, while Pierson was discharged as the result of his regiment being mustered out of the service by the act of the United States.
The right to recover in both cases is based on the provisions of two statutes passed by Congress in the year 1899, the necessity of which grew out of the late war with Spain, the first having been enacted on the 12th day of January, 1899 (30 Stat. L., 784), and the second on March 2, 1899 (30 Stat. L., 979).
The act of January 12, 1899, applicable to this case, is as follows:
“AN ACT Granting extra pay to officers and enlisted men of United States Volunteers.
“That in lieu of granting leaves of absence and furloughs to officers and enlisted men belonging to companies and regiments of the United States Volunteers prior to muster out of the service, all officers and enlisted men belonging to volunteer organizations hereafter mustered out of the service who have served honestly and faithfully beyond the limits of the United States shall be paid two months’ extra pay on muster out and discharge from the service, and all officers and enlisted men belonging to organizations hereafter mustered out of the service who have served honestly and faithfully within the limits of the United States shall be paid one month’s extra paj^ on muster out and discharge from the service, from anjr money in the Treasury not otherwise appropriated.”
The portion of the statute of March 2, 1899 (swpra), which is material to be considered is as follows-
“That to meet the present exigencies of the military service the President is herein aixthorized to maintain the" Regular Army at a strength of not exceeding sixty-five thousand enlisted men, to be distributed amongst the several branches of the service, including the Signal Corps, according to the needs of each, and raise a force of not more than thirty-five thousand volunteers, to be recruited as he maj'- determine from the country at large, or from the localities where their services are needed, without restriction as to citizenship or educational qualificatioiis, and to organize the same into not more than twenty-seven regiments organized as are infantry regiments of war strength in the Regular Army, and three regiments to be composed of men of special qualifications in horsemanship and marksmanship, to be organized as cavalry, for service mouuted or dismounted.
*70 u Provided further, That such increased regular and volunteer force shall continue in service only during the necessity therefor, and not later than July first, nineteen hundred and one.
“All enlistments for the volunteer force herein authorized shall be for the term of two years and four months, unless sooner discharged.”
It is contended on the part of the claimants, that the act of January 12, 1899, is prospective in its operation and determines the rights of officers and enlisted men mustered into the service of the United States under the provisions of the act of March 2,1899; while it is contended on the part of the defendants that the act of January 12, 1899, was intended to include officers and enlisted men who had been enlisted in the service of the United States prior to that time, and was not intended to confer any rights upon persons becoming a part of the military force after the date of its passage.
It is said by claimant, that there is no room for construction as to the meaning of the statutes; that they construe themselves; that inasmuch as a soldier belonged to a volunteer organization, that he served honestíy and faithfully beyond the limits of the United States, that he was discharged after January 12, 1899, therefore, because of these conditions and facts, the unambiguous words of the statute give him a right to compensation as provided by the act of January 12, 1899.
The right of the claimant Clark to the two months’ extra pay was not submitted to the Comptroller of the Treasury, and is not, therefore, embraced in the able opinion rendered by him in the construction of the act of January, 1899.
Without in this connection determining the question as to whether the act is prospective on the rights of those who become soldiers of the United States under the provisions of the act of March 2, 1899, it is sufficient for the purposes of the case of Clark to say that his claim does not come within the terms of the first statute.
It provides—
“ In lieu of granting leaves of absence and furloughs to the officers and enlisted men belonging to companies and regiments of the United States Volunteers, prior to the muster out of the service, all officers and enlisted men belonging to volunteer organizations thereafter mustered out of the serv *71 ice, who have served, * *' * shall be entitled to two months’ extra pay on muster out or discharge from the service.”
The claimant Clark was not, in military parlance, mustered out of the service of the United States, but personally discharged from such service, and as the act contemplates the muster out of the organization to which the soldier belongs* his case does not come within the statute. It intended by its terms to allow extra pay where the service of the soldier was to the termination of the life of the military organization of which he was a member; and when that organization had ceased to be a part of the Army by being mustered out, then the right attached to those who had performed military service to the date of the disorganization of the command. In order to give the officer or soldier the right, the organization must be mustered out and cease to be a part of the Army, and it does not accrue to a person having failed for anjr reason to discharge the full time and obligation to remain until the organization, by the conditions and necessities of the Army, is mustered out of the service.
The case of Pierson, No. 22538, presents a different condition and state of facts in the essential element that his regiment was mustered out of the service of the United States as an organization.
The claim which is made by both the claimants is of purely statutory obligation, and, in order to recover, the claim must come within the intent of the law as exemplified by the language of the law.
It is insisted upon the part of the defendants that the act of June 12, 1899, must be construed in the light of the circumstances existing at the time of its passage, and, applying-that rule of construction, it is maintained that the purpose of Congress was to give the right only to those who had up to that time or might thereafter be mustered out of the service-of the United States as troops raised under the-act of April 22, 1898, to prosecute the war then existing between the United States and the Kingdom of Spain. That it was not intended as a permanent military policy applicable to troops which might thereafter be raised to increase the regular or volunteer forces of the United States.
*72 In cases of doubtful construction it is a safe guide to look into conditions surrounding the subject-matter of the legislation at the time the act was passed. As was said by the Supreme Court in the case of Platt v. Union Pacific R. R. Co. (99 U. S., 48):
“In endeavoring to ascertain what the Congress of 1862 intended, we must, as far as practicable, place ourselves in the light that Congress enjoyed, look at things as they appeared to it, and discover its purposes from the language used in connection with the attending circumstances.”
Without going into the detail of conditions, the terms of the statute recognize a custom or practice of granting leaves of absence to soldiers prior to being mustered out of the service, and adopted, in lieu of that custom or practice, the policy of paj'ing a money equivalent of the leave of absence, and thereby’ secure to the soldier the same bounty or favor received by him from the leave of absence. The object of the statute is to give a bounty, in imitation of the oft-repeated acts of the Government at the close of a war in granting gratuities after the service of the soldier has been rendered, in recognition of his patriotic service.
In cases of doubtful construction courts are permitted to consult the circumstances and conditions under which the law was enacted to ascertain the intent of the legislation. But if the words employed in the phraseology of the law are unambiguous and not made doubtful by the subject-matter to which they are to be applied, courts must give full expression to the language used, in the ascertainment of the intent of the lawmaking power.
Courts must appty the law, deducing its proper construction from its language where it is of obvious impoi't and is reasonably established by the language of the statute.
That fundamental i-ule of construction is most forcibly applied by the Supremo Court in the case of Dewey (178 U. S., 510), in which it is said:
“ Our province is to declare what the law is, and not under guise of interpretation or under the influence of what may be surmised to be the policy of the Government so depart front sound rules of construction as in effect to adjudge that to be law which Congress has not enacted as such. Here the language used by Congress is unambiguous. It is so clear that the *73 mind at once recognizes the intent of Congress. Interpreted according to the natural import of the words used, the statute involves no absurdity or contradiction, and there is consequently no room for construction. Our duty is to give effect to the will of Congress, as thus plainly expressed.” (United States v. Fisher, 2 Cranch, 358, 399; Lake Country v. Rollins, 130 U. S., 662, 670.)
This court said in the same case (35 C. Cls. R., 197):
‘ ‘ It is not a question of what might be called unwritten law, but a question of purely statutory construction, and the intent of the legislature must be deduced from the terms employed in the phraseology and the words of the statute. Courts have no power other than the interpretation of the law as in their judgment it exists. Questions of policy addressing themselves to the other branches of the Government are not incident to the judiciary. They have no policy and no authoritj7' save and except the declaration and application of the law as in their judgment it ma}7 seem to exist. Congress have passed the statute and defined its purposes in the express averment of words. Courts are constrained to follow the import of those words in the determination of the rights of parties and of the G overnment. In doubtful cases arising from ambiguous language courts will inquire into surrounding circumstances, having in view the history of the times and the condition intended to be affected ly the law in coming to a conclusion as to its proper construction. But unambiguous words, importing in and of themselves the purpose and will of the legislature, must be permitted to perform their legitimate functions in the development and ascertainment of that will.”
The claimant, Pierson, applying the law as its words indicate the will of the legislature, has all of the qualifications enumer-rated by the act of January 12,1899. He was enlisted in the United States volunteer service; faithfully discharged his duties beyond the limits of the United States; was honorably discharged from the militaiy service on April 1, 1901, the discharge being the result of the mustering out of the regiment to which he belonged. Applying the law as determined by the rule of construction prescribed by the Supreme Court to those facts, it follows that he is entitled to recover under the prolusions of said act the sum of $31.20.
In the case of Clark (No. 22397) the petition is dismissed.