Peelle, J.,
delivered the opinion of the court:
The claim in this case was transmitted to the court by the Secretary of the Treasury at the request of the Auditor for the War Department under section 2, act of March 3, 1883 (22 Stat. L., 485), as involving controverted questions of law upon which the' Department desires the opinion of the court for its guidance and action.
The controverted questions of law, as stated by the Auditor, are as follows:
“1. Was an officer who was appointed a judge-advocate in the Volunteer Army of the United States, with the rank of lieutenant-colonel, under the provisions of section 10 of the act of Congress approved April 22, 1898 (30 Stat. L., 362), and who accepted said appointment, and who, under instructions from the President, acting under authority of the provisions of section 14 of the act of March 2, 1899 (30 Stat. L., 980), was discharged under said provisions to enable him to accept, and who did accept, a commission as a judge-advocate with the rank of major in the Volunteer Army, under said provisions, continued in service under said provisions, or was he discharged from the service within the meaning of section *410 1289 of the Revised Statutes of the United States, so that he became entitled to receive the traveling allowances therein provided for ?
“2. Did the concluding portion of the Army appropriation act of May 20, 1900 (31 Stat. L., 217), confer any right to receive extra pay upon any officer so circumstanced?”
Since the reference of the claim the claimant has filed his petition herein, praying for judgment under the provisions of section 13, act of March 3,1887 (24 Stat. L., 505), which provides, in substance, that in every case which shall come before the court or that is now pending therein under the act of March 3, 1883 (supra), wherein—
“it shall appear to the satisfaction of the court, upon the facts established, that it has jurisdiction to render judgment or decree thereon under existing law or under the provisions of this act, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require. * * * ”
The claimant in his petition claims, first, travel pay under Revised Statutes, section 1289, from Manila, P. I., the place of his discharge from the Army, to his home in Des Moines, the place of his enlistment, a distance of 9,306 miles, at the rate of one day for every 20 miles, as in said section provided, equal to four hundred and sixty-five and three-tentlis days’ paj' at the rate of $3,000 per annum, amounting to $3,824.38.
He also claims two months’ extra pay as lieutenant-colonel under the act of January 12, 1899 (30 Stat. L., 784), as extended to officers of the general staff by the act of May 26, 1900 (31 Stat. L., 207), amounting to $500.
The claimant was appointed judge-advocate with the rank of lieutenant-colonel in the Volunteer Army of the United States under section 10, act of April 22, 1898 (30 Stat. L., 362), and accepted his commission as such May 17, 1898, at his home in Des Moines, Iowa. In that capacity he served until April 17, 1899, when he was discharged at Manila, where he was then serving, pursuant, to Special Order No. 87, paragraph 46, which so far as pertains to this case reads as follows:
“Under instructions from the President the following-named staff officers are honorably discharged from the Volunteer Army of the United States by the Acting Secretary *411 of War, to take effect April 17, 1899, under tlie provisions of the acts of Congress approved April 22, 1898," and March 2, 1899, to enable them to accept commissions as volunteer officers under the act last cited.” •
On the day of his discharge under that order the claimant was commissioned, at Manila, a judge-advocate with the rank of major, under section 14, act of March 2, 1899 (30 Stat. L., 980), authorizing the President to continue in the service, or to appoint, by and with the advice and consent of the Senate, certain officers of the volunteer staff, including five judge-advocates with the rank of major, and thereafter, on April 4, 1901, the claimant accepted a commission as major and judge-advocate in the Regular Army.
Revised Statutes, section 1289, provides:
“When an officer is discharged from the service, except by wajr of punishment for an offense, he shall be allowed transportation and subsistence from the place of his discharge to the place of his residence at the time of his appointment, or to the place of his original muster into the service. The Government may furnish the same in kind, but in case it shall not do so, he shall be allowed travel pay and commutation of subsistence, according to his rank, for such time as may be sufficient for him to travel from the place of discharge to the place of his residence, or original muster into service, computed at the rate of one clay for every twenty miles. ”
As the claimant was not discharged from the service by way of punishment for an offense, or at his own request, it is clear that if he had not reentered the service after his discharge as lieutenant-colonel he would have been entitled to transportation ancl subsistence from the place of his discharge to the place of his residence at the time of his appointment (or in lieu thereof, if not furnished transportation in kind) to travel pay and commutation of subsistence according to his rank.
The obvious purpose of that statute is that when an officer, without any fault of his own, “is discharged from the service” in which he has honorably served, he shall be furnished transportation and subsistence in kind from the place of his discharge to the place of his residence.
It is not shown that transportation and subsistence in kind were requested bjr the claimant, or that the same were denied *412 him otherwise than, by his immediate!}' reentering the Army ■as judge-advocate with the rank of major.
But assuming that the present ease meets all the requirements essential to entitle the claimant to travel pay and commutation of subsistence but for his reentering the service as major and judge-advocate on the same day he was discharged as judge-advocate and lieutenant-colonel, did his reentry into the service immediately upon his discharge operate to take away the right to transportation and subsistence that might otherwise have accrued to him? That is to say, was he “ discharged from the service ” of the Army within the meaning of the statute quoted?
A case somewhat similar to the present one is that of the United States v. Thornton (160 U. S., 654),'where a similar statute was under construction respecting the transportation and subsistence of enlisted men.
In that case the claimant had enlisted at Washington as a private in the Marine Corps, and after several years’ service was discharged at Mare Island, Cal., from which place he was allowed travel pay and commutation of subsistence to Washington, the place of his enlistment. But he did not return to Washington, and four days after his discharge reenlisted at Mare Island as a private, and in the course of his service was returned to Washington, where, at his own request, he was discharged, and the question was as to his right to transportation and subsistence from the place of his discharge to the place of his second enlistment, and the court said:
“So, if such discharge and reenlistment were so near together that they constituted practically a continuous service, we think the second enlistment may be treated as a reenlistment, and if the soldier be returned to the place of his original enlistment and there discharged he would not be entitled to an allowance for travel and subsistence.”
Furthermore, the court in that case said that the allowances for transportation and subsistence were both—
“presumptively for expenses actually incurred, as is evident from the provision that they may be furnished in kind, and are designed to reimburse the soldier for all necessary outlays of returning to the place of his enlistment, which is treated as presumptively his home. * * * The presumption, however. that these allowances are for expenses actually incurred *413 is not absolutely conclusive, and if it be shown that the soldier can not possibly intend to incur the expenses for which the allowance is made, or for some reason he is not within the spirit of the act, he is not entitled to the allowance. His claim, therefore, should be based upon something more than a mere technicality. If, for example, the petitioner’s discharge and reenlistment at Mare Island had been contemporaneous acts, he would clearly not have been entitled to travel pay and subsistence to Washington; and such we understand to have been the practice of the Department.”
To the same effect also is the case of Reichman (24 C. Cls. R., 485), where a first sergeant in the Army was discharged as an enlisted man and appointed a second lieutenant. He proceeded to join his company, drawing in advance an officer's mileage for the journey. He then sought in this court to recover travel pajr as an enlisted man from the place of his discharge as first sergeant to the place of his enlistment. The court held that he was not entitled to recover unless his connection with the Army was actually and filial^ severed; and that having accepted the appointment of second lieutenant on his discharge as first sergeant, such discharge had not the effect to filial^ sever his connection with the Araiy. On the contrary, he remained continuously in the service, and for that reason he was held not entitled to recover.
For the purpose of computing longevity pay the Supreme Court, in the case of United States v. Alger (151 U. S., 362; 152 U. S., 384), held that where an officer resigned one day and was appointed to a higher grade the next da}” he was to be considered as having been engaged in a continuous service. The Burnett case (37 C. Cls. R., 49) is neither controlling nor in point in the present case.
Section 14 of the act of March 2, 1899 (supra), entitled “An act for increasing the efficiency of the Army of the United States, and for other purposes,” provides—
“That the President is heiMry -authorized to continue in service, or to appoint, by and with the advice and consent of the. Senate, officers of the volunteer staff, as follows: * * * five judge-advocates with the rank of major. * _® *”
So that the very act under which the claimant was appointed upon his discharge as lieutenant-colonel provided for his continuance in the service, and to enable him to accept the *414 appointment of judge-advocate with the rank of major it was necessary that he be discharged as lieutenant-colonel, which was done pursuant to the order hereinbefore recited, and the order recites that he, with other volunteer staff officers, were' discharged “to enable them to accept commissions as volunteer officers under the act last cited.”
The claimant accepted a commission under that act immediately upon his discharge as lieutenant-colonel, and he therefore elected to continue in the service rather than to bo discharged therefrom. His service was continuous, and not having been discharged from the service within the meaning and spirit of section 1289, and not having in fact performed any travel consequent upon his discharge, he is not entitled to travel pay or commutation of subsistence.
In respect to the claimant’s right to “two mouths' extra pay,” section 1 of the act of January 12, 1899 (30 Stat. L., 784), provides:
“That in lieu of granting leaves’of absence and furloughs to officers and enlisted men belonging to companies and regiments of United States Volunteers prior to muster out of the service, all officers and enlisted men belonging to volunteer organizations hereafter mustered out of the service who have served honestly and faithfully beyond the limits of the United States shall be paid two months’ extra pay on muster out and discharge from the service; and all officers and enlisted men belonging to organizations hereafter mustered out of the service who have served honestly and faithfully within the limits of the United States, shall be paid one month’s extra paj^ on muster out and discharge from the service from any money in the Treasury not otherwise appropriated: Provided, That the discharge of all officers and enlisted men from the volunteer service of the United States shall, as far as practicable-take effect on the date of the muster out of the organization to which they belong, and that regiments and other independent organizations shall bo mustered out at camps within the limits of the United States, or at the rendezvous of the State', regiment, or independent organization.”
That act was extended to volunteer officers of the general staff by the act of May 26, 1900 (31 Stat. L., 217), which reads:
“ That the act approved January twelfth, eighteen hundred and ninetj'-nine, granting ‘ extra pay to officers and enlisted *415 men of the United States Volunteers,’ shall extend to all volunteer officers of the general staff who have not received waiting orders pay prior to discharge, at the rate of one month to those who did not serve beyond the limits of the United States, and two months to those who served beyond the limits of the United States; and officers and enlisted men of volunteer organizations, who have served honestly and faithfully in the Volunteer Army of the United States during the war with Spain and have been honorably discharged without furlough, or by reason of their services being no longer required, or at any time by reason of wounds received, or disability contracted in the service and in the line of duty, and who have not received the extra pay granted in said act or in subsequent acts of Congress supplemental thereto;
“And this act shall be deemed to apply to officers of volunteers who resigned and enlisted men of volunteers who were discharged upon their own applications subsequent to the issue of orders for the muster out of their organizations and prior to the dates of muster out.”
It Avill thus be seen that the claimant’s right depends upon the construction of the statutes quoted.
It will be noted that by- the acts quoted the two months’ extra pay to volunteer officers of the general staff depend upon—
First. Whether such officers have received waiting orders pay prior to their discharge;
Second. Whether they have served honestly and faithfully beyond the limits of the United States; and
Third. AVhether they bring themselves within the provisions of the act as officers mustered out and discharged from the service of the United States.
The claimant brings himself within the first two conditions, but was he mustered out and discharged from the service within the meaning of the acts? For if he was, then he is entitled to the two months’ extra pay, if the act of May 26, 1900 (supra;), applies to those mustered out and discharged prior to the passage thereof, that is to say, if the act of May 26, extending the provisions of the act of January 12, 1899 (supra), to volunteer officers of the general staff is retroactive; and in this respect the language of the act is that the apt of January 12, 1899, “ shall extend to all volunteer officers of *416 the general staff who have not received waiting orders pay prior to discharge.”
That language seems broad enough to embrace the officers named “ who have not received waiting orders pajr prior to discharge,” and such we conceive was the purpose of the extending act.
The manifest purpose of the act of January 12, 1899, was, as we read the language, “that in lieu of granting leaves of absence and furloughs to officers and enlisted men ” of volunteer organizations thereafter mustered out of the service, who served honestly and faithfully, they should, “on muster out and discharge from the service,” be paid one or two months’ extra pay, dependent upon whether they so served within or beyond the limits of the United States.
The proviso to that act also clearly indicates that it was the purpose of the Congress to grant such extra pay only on muster out and discharge from the service,.such discharge from the service to take effect, as far as practicable, “on the date of the muster out of the organization to which they belong. ” Such was the ruling of this .court in the case of Harry A. Clark v. The United States (37 C. Cls. R., 60), where it was held in substance that a soldier discharged before the muster out of his regiment was not entitled to the two. months’ extra pay given by the act of January 12,1899, the court, in this respect, saying:
‘ ‘ The claimant, Clark, was not, in military parlance, mustered out of the service of the United States, but personally discharged from such service. As the act contemplates the muster out of the organization to which the soldier belongs, his case does not come within the statute. If intended by its terms to allow extra pay where the service of the soldier was to the termination of the life of the military organization of which he was a member, and when that organization had ceased to be a part of the Army l^r being mustered out, then the right -attached to those whp had performed military service to the date of the disorganization of the command. In order to give the officer or soldier the right, the organization must be mustered out and cease to be a part of the Army, and it does not accrue to a person having failed for any reason to discharge the full time and obligation to remain until the organization, by the conditions and necessities of the Army, is mustered out of the service.”
*417 But in respect to the claim of Pierson, which was considered in that same case, who was discharged and mustered out with the organization to which he belonged, the court held that he was entitled to the two months’ extra pay. He thereby severed his connection with the service.
The act of May 26, 1900 (supra), extends the act of Januar 12, 1899, to “volunteer officers of the general staff who have not received waiting-orders pay prior to discharge.” So by virtue of the, latter act the volunteer officers of the general staff thereby become entitled to the benefit of the act of January 12, 1899, on their muster out and discharge from the service, the same as officers and enlisted men belonging to volunteer organizations.
But the claimant was not mustered out and discharged from the service within the meaning of that act as construed in the Clark case (supra). He did not thereby sever his connection with the service. On the contrary, he was discharged, not from the service, but to enable him to continue in the service under another grade; that is to say, to enable him to continue in the service as judge-advocate with the rank of major he was discharged as lieutenant-colonel. His discharge was rather into than out of the service. He elected to continue in the service where he could enjoy continuous pay rather than to end his career in the Army and receive two months’ extra pay.
We are therefore of the opinion that the acts referred to apply only to officers and enlisted men who were mustered out and discharged from the service, and not to those who were discharged to enable them to continue in the service.
Whether the acts, if in force, when the claimant majT hereafter be mustered out and discharged from the service in his present grade would apply, we arc not now called upon to decide.
For the reasons we have given, the claimant is not entitled to recover, and his petition is therefore dismissed. The facts found by the court, together with this opinion, will be certified to the Secretary of the Treasury pursuant to section 13, act of March 3, 1887 (24 Stat. L., 505):