WeldoN, J.,
delivered-the opinion of the court:
The facts applicable to this claim are briefly as follows: The claimant was appointed and served from the 25th of July, 1890, to August 18,1900, as the keeper of the Biscayne House of Refuge, in the Eighth life-saving district, Florida, and during said time was in active performance of his duties. From August 18, 1900, to April 21, 1902, he was carried on the rolls, but did not perform the duties of keeper, and his salary during said time was paid to substitutes who performed the work of the station. The claimant was discharged from' the service April 21, 1902, and received no pay after August L8, 1900.
The Biscayne House of Refuge was a dwelling supplied with cots and provisions for the succor of shipwrecked persons cast ashore on the coast of Florida. It ivas not supplied with lifeboats or life-saving apparatus, nor was any crew employed in the same, it being in charge of the keeper only, who resided at the house throughout the year. His duty as such keeper was, immediately after storms, to go personally and send such members of his family as were available along the shore to as great a distance as was practicable, for the purpose of finding and succoring any persons that may have been cast ashore, and for that purpose to make diligent .search in each direction from the station. He ivas- not required to perform any services relating to the drill and discipline of crews,- nor attend at shipwrecks with boat or beach apparatus, nor to keep watch for distressed vessels in inclement or thick weather, nor anjr of the hazardous and responsible duties which devolve upon a member of a life-saving station.
The claimant did, in fact, keep a lookout from sunrise-to sunset, and kept watch on stormy nights, but he was not required to do so by the rules of the service. He was required *550 to be expert in signals and in resuscitating the apparently drowned, but there was no regular routine of drill prescribed for him by the rules of the service.
Prior to entering the Life-Saving Service and during the period of service prior to June, 1900, claimant was in perfect health and physically sound. On June 25,1900, while engaged in sailing a supply boat, in the performance of his regular duties, he became ruptured, and although partially disabled he continued to perform his duties without outside help until August 18, 1902, when he was pronounced wholly disabled and unfit for duty, and the station was then turned over to a substitute. The claimant was, by reason of his disability, unfit for the performance of his duties for more than one year from Aiigust 18, 1900. Ho was not an enlisted man, but an officer appointed bjT the Secretary of the Treasury, whose tenure of office ivas terminable only by death, resignation, or dismissal.
The claimant presented a claim for the benefits of section 7, of the act of May 4,1892, which was disallowed on the ground that keepers of houses of refuge are not included in the provisions of that act.
On Juty 8,1901, he filed his petition in this court, claiming full pay during the first year’s continuance of such disability after the expiration of his tenure of service, as provided in the act of May 4, 1892, amounting to the sum of $600.
The claim of the petition is founded on the seventh section of the act of Ma3r 4, 1882 (1 Supp. Rev. Stat., 341), which is as follows:
“That if any keeper or member of a crew of a life-saving or life-boat station shall be so disabled by reason of any wound or injmy received or disease contracted in the Life-Saving Service in the line of duty as to unfit him for the performance of duty, such disability to be determined in such manner as shall be prescribed in the regulations of the service, he shall be continued upon the rolls of the service and entitled to receive his full pay during the continuance of such disabilhy, not to exceed the period of one year, unless the general superintendent shall recommend, upon a statement of facts, the extension of the period through a portion or the whole of another year, and said recommendation receive the approval of the Secretary of the Treasury as just and reasonable; but *551 in no case shall said disabled keeper or member of a crew be continued upon the rolls or receive pay for a longer period than two years.”
The fifth section of the act gives to the Secretary of the Treasury the power of appointment and the right to fix the annual compensation “of the several keepers of all stations and houses of refuge.” The sixth section provides that crews may be employed at any “of the life-saving or lifeboat stations” on the Pacific coast during a portion of the year; then follows section 7, upon which the claimant founds his right of recoveiy; and in that section it is provided ‘ ‘ that if any keeper or member of a crew of a life-saving or lifeboat station shall be disabled by reason of any wound or injury received or disease contracted in the Life-Saving Service,” such person shall be entitled, upon certain conditions, to certain pay and emolument during a certain period.
The only question for us to determine is, Does the claimant come within the provisions of the seventh section of the statute? It will be seen that in section 5, “ keepers of houses of refuge ” are mentioned in fixing the compensation, and then following, in section 6, they are omitted from the provisions of that section, and so in section 7. When the-statute enumerates the persons entitled to the benefit of the seventh section, the keepers of houses of refuge are entirely omitted. No mention is made of them; and from the context sections 5 and 6, taken in connection with section 7, it clearly appears that Congress intended to omit the class known as keepers of houses of refuge. For reasons based upon the character of the service, the statute makes a distinction between such persons and those connected with the “life-saving or lifeboat stations.”
The seventh section was intended to provide for persons suffering the consequence of an accident happening while thejr engaged in a particular service, to wit, “life-saving” or “lifeboat” station service, omitting reference to employment in the “house of refuge” service.
The distinction made in the service by the terms of section 7 was evidently founded on the character of the service performed, the one being extremely dangerous and the other, while laborious and arduous, not necessarily dangerous. It is a familiar principle of law that where a suit is brought *552 upon a statute, claiming a compensation under the statute, the plaintiff must bring himself within the terms of such statute either bjr express designation or reasonable intendment. The fact that the claimant, as a keeper of a house of refuge, is omitted from the terms of the statute leaves the claimant in the prosecution of his suit to the alternative of reasonable intendment; but that contention of a rigiit to recover is answered by an examination of the context and the section on which the proceeding is based.
The language of the law construes itself, and therefore no necessity exists to look beyond for the legal import of the words and purpose of the statute. The case comes within many cases which have been decided by the Supreme Court and this court in the application of the rules of statutory construction.
The most recent case involving the construction of a statute in the Supreme Court and this court is the case of Dewey v. The United States (35 C. Cls. R., 197, and 178 U. S., 510).
In affirmance of the judgment of this court the Supreme Court said:
“Our province is to declare what the law is, and not under guise of interpretation or under the influence of what may be surmised to be the policy of the Government, so to depart from sound rules of construction as in effect to adjudge that to be law which Congress has not enacted as such. Here the language used by Congress is unambiguous. It is so clear that the mind at once recognizes the intent of Congress. Interpreted according to the natural import-of the words used, the statute involves no absurdity or contradiction, and there, is consequently no room for construction. Our dutjr is to give effect to the will of Congress, as thus plainly expressed.” (United States v. Fisher, 2 Cranch, 358, 399; Lake County v. Rollins, 130 U. S., 662, 670.)
It is said by the court:
“It is not a question of what might be called unwritten law, but a question of purely statutory construction, and the intent of the legislature must be deduced from the terms employed in the phraseology and the -words of the statute.”
We have considered section 10 in the act of 1882 (supra), cited by claimant’s counsel, and other provisions of the stat- *553 ates, but do not find that they assist the claimant in the construction which he asks the court to place on section 7, which is the alleged basis of his claim. It is the judgment of the court that the petition be dismissed.